## WILLIAM H. SWAN *vs.* JESSE STEDMAN & others.

A sealed contract, executed by one of several partners in the name of the firm, binds the firm, if the other partners assent to or ratify such contract; and their assent or ratification may be by parol authority previously given, or by acts or parol admissions, or by acts without any parol admissions afterwards; provided the acts be such as would not have been done if such assent had not been given.

Where a partnership is formed for a limited time, and one of the partners executes, in the name of the firm, a sealed contract concerning business which is to be continued beyond that time; the other partners, although they do no new business, as partners, after that time, and although they have no knowledge of such contract until after that time has expired, may nevertheless, before the concerns of the partnership are closed, ratify such contract, so as to be bound thereby, by mere silent assent thereto.

ASSUMPSIT on the money counts. The action was against Jesse Stedman, Henry Barnard and Otis P. Sheldon. The plaintiff filed a bill of particulars, in which he claimed, among other things, the amount of certain losses in manufacturing, in part of which the firm of Darling & Bellows were interested.

In appeared from the report of the evidence given at the trial before *Hubbard*, J. that as early as December 1835, the plaintiff, and the defendant Stedman, were engaged in business together in such a manner that Stedman sent wool to the plaintiff to sell or manufacture, and that the plaintiff was engaged in manufacturing such wool, by employing John Jepherson, and also by employing Darling & Bellows to work the same by the yard, and that the cloths, when manufactured, were sold by the plaintiff, who shared with Stedman in the profit and loss of the manufacturing and sales.

On the 10th of February 1836, the three defendants were to gether at Stedman's house, in Chester, Vermont, for the purpose of forming a partnership; and in the conversation previously to entering into articles of partnership, Stedman stated to the other defendants the kind of business which he was then carrying on with the plaintiff, and proposed to give them the benefit of the contract with the plaintiff. The defendants, on that day, entered into a written and sealed contract of partnership, by which they were to continue partners for " one year, ending the 20th of February 1837, under the firm of Stedman, Barnard & Co." It

was a part of said contract that Troy (N. York) should "be the seat of business for this company." The 5th article of this contract, (which is hereinafter recited in the opinion of the court,) set forth the business which was to be transacted by said firm.

No business was done by Stedman, Barnard & Sheldon, as partners, after the 20th of February 1837.

On the 25th of April 1836, the plaintiff entered into a contract with Darling & Bellows for the manufacturing by them of wool into cloth, for a certain sum per yard ; they to share one fourth part of the profits or losses of the business.

On the 28th of April 1836, Stedman and the plaintiff entered into a written contract under seal, signed by Stedman, in the names of " Stedman, Barnard & Sheldon " and by the plaintiff as in the margin.*

---

* An agreement made this 28th day of April 1836, by and between William H. Swan of Worcester, in the County of Worcester, and State of Massachusetts, of the first part, and Jesse Stedman of Chester in the County of Windsor, and State of Vermont, Henry Barnard of Troy in the County of Rensellaer, and State of New York, and Otis P. Sheldon of Rochester in the County o" Monroe, and State of New York, aforesaid, known under the name and firm of Stedman, Barnard & Sheldon, of the second part —

Witnesseth, That whereas the aforesaid parties are now stocking three sets of satinet machinery in Holden in the County of Worcester, and State of Massachusetts, and paying by the yard for manufacturing, and intend starting a number more, not exceeding six sets in all :

Therefore, *Article First.* The said Swan agrees to furnish funds, by drafts or otherwise, to the said Stedman, Barnard & Sheldon, to purchase wool from time to time as may be thought best for the interest of the parties, sufficient to stock the machinery for manufacturing satinets as aforesaid, to oversee the manufacturing of said satinets, select suitable places and agents for selling the cloths, and do all business relating to disposing of said goods, settling for stock and manufacturing, and all things necessary to be done in disposing of the goods, and collecting and closing up the sales, free of expense to the said parties, except actual expenses, which shall be paid by the concern.

*Article Second.* The said Stedman, Barnard & Sheldon agree, on their part, to purchase and deliver to said Swan, in Worcester aforesaid, wool sufficient to stock all machinery aforesaid, free of expense to the said parties, except actual moneys paid out for freight and travelling expenses, and sacks to pack the wool in.

*Article Third.* Said William H. Swan shall charge all wool, manufactured as aforesaid, at six months to himself or the concern, sufficiently high to cover the cost and all actual expenses, with the addition of five per cent., which commis-

The contracts aforesaid between the plaintiff and Darling & Bellows, and between the plaintiff and Jepherson, to manufac ture wool by the yard, were terminated by the parties in January 1837, and nothing was done under those contracts after that month.

There was evidence tending to prove that a duplicate of the aforesaid contract of the 28th of April 1836, (which was pro duced in court by the defendants' counsel,) was forwarded from Worcester to Troy, on the 8th of November 1836, directed to Stedman, and that it was filed with the papers of the firm of Stedman, Barnard & Sheldon ; that in March 1837, it was seen in the hands of Barnard, at Troy, when Sheldon was there ; and that it was in Barnard's possession, in the city of New York, in November 1841. But it was not shown, by any positive proof, that this contract was ever seen by Sheldon. The plain tiff introduced other evidence, for the purpose of showing that Barnard & Sheldon had authorized Stedman to execute the said contract of April 28th, or had ratified it afterwards.

The defendants, Barnard & Sheldon, contended that as to the plaintiff's claim for losses in manufacturing, they were not liable, inasmuch as they were not partners with the plaintiff ; that although they were interested, by their contract with Stedman, in the profits, if any, of his contract with the plaintiff, and might, as between themselves and Stedman, be liable to share in the losses, yet they were not thus liable to the plaintiff. And they

---

sion shall be paid to the said Swan for furnishing funds, and doing the business aforesaid.

This contract commenced with Jesse Stedman and William H. Swan, De cember, eighteen hundred and thirty-five, and agreed to by said Barnard & Sheldon, April 28th 1836, and is to continue in full force from and after the month of December aforesaid, for the term of two years from the first day of April or May 1836, or when Darling & Bellows' lease expires, said Darling & Bellows now being the manufacturers for the parties, also John Jepherson of said Holden. And each party at the time of the final closing up of the con cern shall share equally in the profits and losses, after fulfilling all contracts, which are made or may be made with the manufacturers, Darling & Bellows, John Jepherson, or others that may be employed hereafter.

STEDMAN, BARNARD & SHELDON. (SEAL.)
WILLIAM H. SWAN. (SEAL

requested the judge to rule that the contract of April 28th 1836, being under seal, was not binding on them, without a previous au'hority or subsequent ratification thereof by them under seal. But the judge instructed the jury, that if Barnard & Sheldon assented to or ratified this contract, they would be bound by it, and that this might be by parol authority previously given, or by acts or parol admission, or by acts without any parol admission afterwards ; provided the acts were such as would not have been done if such assent had not been given.

The defendants, Barnard & Sheldon, further requested the judge to rule that if they had no knowledge of the contract of April 28th 1836, until after the expiration, on the 20th of February 1837, of their contract of partnership with Stedman, they would not be bound by a mere silent assent thereto, but that an express assent thereto was necessary. But the judge instructed the jury, that if the business of the partnership had not been closed when said contract of April 28th came to their knowledge, they would be bound by it, if they assented to it, and that such assent need not be proved by express words on their part.

The jury returned a verdict for the plaintiff; and on being inquired of, they answered that they found a ratification, by all the partners, of the contract of April 28th 1836.

The defendants, Barnard & Sheldon, by their counsel, alleged exceptions to the several aforesaid rulings and instructions.

*Washburn,* for Barnard & Sheldon.

*Merrick & C. Allen,* for the plaintiff.

DEWEY, J. We perceive no valid objection to the ruling of the presiding judge in the present case.

Upon the question of the authority of one partner to bind his copartner by a contract under seal, the doctrine of the case of *Harrison* v. *Jackson,* 7 T. R. 207, is still adhered to, though practically the rule has been somewhat relaxed, perhaps, by the various decisions as to the competeney of parol evidence to establish the previous assent or subsequent adoption necessary to give force and effect to such contract. It is now held, that such a contract under seal, executed by one partner, may bind the other, provided he gives his assent thereto previous to the

execution, or afterwards ratifies and adopts it ; and that such assent or adoption may be by parol. This subject was fully considered in the case of *Cady* v. *Shepherd*, 11 Pick. 400, and this rule was distinctly recognized and stated in the opinion of this court, given on that occasion. The decision in that case goes fully to sustain the instructions to the jury upon the general question, raised in the present case, as to the authority of one partner to bind his copartner by a sealed contract. See also 3 Kent Com. (3d ed.) 47.

But it was further contended at the trial, and instructions to that effect were asked, that if the other partners had no knowledge of this sealed contract until after the expiration of the time stated in the partnership contract for the dissolution of the same, in such case a mere silent assent would be insufficient, and an express assent would then be requisite to constitute a ratification. But we do not perceive any sound reason for a distinction between the two periods of time, that should require an express assent in the one and not in the other, to constitute a legal ratification or adoption of the act of the other partner. The assent, whenever given, has reference to a contract executed during the partnership ; and in the instruction given to the jury, it was confined to a period while the concerns of the partnership were open, and while the party thus assenting might be benefited by the contract, if it proved an advantageous one ; and this obviates the objection, taken at the argument, as to the want of sufficient consideration to make the assent a binding and valid agreement.

If the contract had reference to the business of the partnership, and the defendants were to be participators in the profits arising therefrom, and if it was made known to them before the partnership concerns were closed, (although not until after the time which was indicated in the articles of partnership for the expiration of the original partnership,) and if they then assented to it and adopted it, such act would be binding; and such assent need not be an express one, but may be implied from the acts and declarations of the parties whose liability is attempted to be established, and from any other proper evidence tending to show such assent. See Chit. Con. (5 Amer. ed.) 253 *a*, and cases there cited.

Neither of these objections, therefore, can avail the defendants.

Nor do we perceive any valid objection to the right of tne plaintiff to recover, arising from the suggestion that this contract was without the business of the partnership, and therefore would not be obligatory on the other partners, even if it had been a contract not under seal. The business of the partnership, as well as the power to bind each other, is stated very broadly in the articles of partnership. It is thus : " Article 5. It is mutually agreed that the business transactions of the firm shall be that of purchasing wheat, making and selling flour, purchasing and selling produce and provisions, purchasing, selling and manufacturing wool, and finally, transacting all business of trade and commerce, that each or either person concerned may in his prudent judgment deem to be for the mutual interest of all parties concerned ; and each partner shall be bound by the acts of the other or others in all transactions relating to the business of the company."

We cannot doubt that this contract was so far within the scope of the business of the partnership, as to have warranted the execution, by one of the firm, of a simple contract binding on the others ; certainly so, if subsequently assented to and ratified by the others.

*Judgment on the verdict.*